IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARKUS IMAGING, INC., | ) |
| Plaintiff, | ) ) ) ) |
| v. | )  Civil Action No._____ |
| ADOBE SYSTEMS, INC.; CANON U.S.A., INC.; NIKON AMERICAS, INC.; and NIKON, INC., | ) ) ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Tarkus Imaging, Inc., ("Plaintiff" or "Tarkus"), by and through its undersigned counsel, files this Complaint against Adobe Systems, Inc. ("Adobe"); Canon U.S.A., Inc. ("Canon"); Nikon Americas, Inc., and Nikon, Inc. (collectively, the "Nikon defendants") as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement to stop Defendants' infringement of one or more claims of Plaintiff's United States Patent No. 6,628,823, entitled "Pictorial Digital Image Processing Incorporating Adjustments to Compensate for Dynamic Range Differences" ("the '823 Patent" or "patent-in-suit"), a copy of which is attached hereto as Exhibit 1. Plaintiff and its majority shareholder are the legal owner and sole inventor respectively of the '823 Patent, which was issued by the United States Patent and Trademark Office on September 30, 2003. Plaintiff seeks injunctive relief and monetary damages.

## THE PARTIES

2. Plaintiff Tarkus Imaging, Inc., is a corporation organized under the laws of the State of California, and having a principal place of business at 1199 Pheasant Hill Court, California 95120.

3. Adobe is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 345 Park Avenue, San Jose, California 95110.

4. Canon U.S.A., Inc., is a corporation organized under the laws of New York, with its principal place of business located at One Canon Plaza, Lake Success, NY 11042.

5. Nikon Americas, Inc., is a corporation organized under the laws of the state of Delaware, with its principal place of business located at 1300 Walt Whitman Road, Melville, NY 11747.

6. Nikon, Inc., is a corporation organized under the laws of the state of New York, with its principal place of business located at 1300 Walt Whitman Road, Melville, NY 11747.

## JURISDICTION AND VENUE

7. This is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 100 *et seq.*

8. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9. Adobe is subject to this Court's personal jurisdiction because it is organized and exists under the laws of the State of Delaware and has conducted and does conduct business within the State of Delaware. Adobe, directly and/or through intermediaries (including, distributors, retailers, partners, subsidiaries and others), ships, distributes, offers for sale, sells, advertises, and uses its products in the United States, including the State of Delaware. Adobe

(directly and/or through intermediaries) has purposefully and voluntarily placed one or more of its infringing products, as described below in Count I, into the stream of commerce with the expectation that the infringing products will be used in the State of Delaware. These infringing products have been and continue to be used in the State of Delaware. Adobe has committed patent infringement within the State of Delaware. In addition, Adobe Systems, Inc. has designated an agent for service of process in the State of Delaware.

10. Canon is subject to this Court's personal jurisdiction because it has conducted and does conduct business within the State of Delaware. Canon, directly and/or through intermediaries (including, distributors, retailers, partners, subsidiaries and others), ships, distributes, offers for sale, sells, advertises, and uses its products in the United States, including the State of Delaware. Canon (directly and/or through intermediaries) has purposefully and voluntarily placed one or more of its infringing products, as described below in Count II, into the stream of commerce with the expectation that the infringing products will be used in the State of Delaware. These infringing products have been and continue to be used in the State of Delaware. Canon has committed patent infringement within the State of Delaware.

11. Nikon Americas, Inc., is subject to this Court's personal jurisdiction because it is organized and exists under the laws of the State of Delaware and has conducted and does conduct business within the State of Delaware. Nikon Americas, Inc. directly and/or through intermediaries (including, distributors, retailers, partners, subsidiaries and others), ships, distributes, offers for sale, sells, advertises, and uses its products in the United States, including the State of Delaware. Nikon Americas, Inc. (directly and/or through intermediaries) has purposefully and voluntarily placed one or more of its infringing products, as described below in Count III, into the stream of commerce with the expectation that the infringing products will be

used in the State of Delaware. These infringing products have been and continue to be used in the State of Delaware. Nikon Americas, Inc. has committed patent infringement within the State of Delaware. In addition, Nikon Americas, Inc. has designated an agent for service of process in the State of Delaware.

12.  Nikon, Inc. is subject to this Court's personal jurisdiction because it has conducted and does conduct business within the State of Delaware. Nikon, Inc., directly and/or through intermediaries (including, distributors, retailers, partners, subsidiaries and others), ships, distributes, offers for sale, sells, advertises, and uses its products in the United States, including the State of Delaware. Nikon, Inc. (directly and/or through intermediaries) has purposefully and voluntarily placed one or more of its infringing products, as described below in Count III, into the stream of commerce with the expectation that the infringing products will be used in the State of Delaware. These infringing products have been and continue to be used in the State of Delaware. Nikon, Inc. has committed patent infringement within the State of Delaware.

13.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## BACKGROUND FACTS

14.  Mr. Jack M. Holm ("Mr. Holm"), founder of Tarkus Imaging, Inc., is the sole inventor of the patent-in-suit and the majority shareholder of Plaintiff.

15.  From 1987 to 1994, Mr. Holm taught technical photography at the Rochester Institute of Technology (RIT) while working on a masters degree in imaging science. While at RIT, and afterwards, Mr. Holm did consulting work for companies such as 3M Corporation, Eastman Kodak Co., Hewlett Packard Co., NASA Langley Research Center, and Polaroid Corp. and worked on various standards committees, including the photography standards committee

ISO/TC 42. During this time, Mr. Holm discovered that one of the advantages of digital photography was that many decisions that had to be made before taking a picture with film photography could be made after taking the picture with digital photography. For example, image lightness, contrast, white balance, etc. could be set after image capture by saving raw camera sensor data and processing them after the picture was taken, which would provide a significant advantage for digital photography.

16.  Mr. Holm left RIT in 1994 to start work on the development of digital photography processing while still consulting and working on various standards committees in the field of digital photography. During this time, Mr. Holm identified a deficiency in the field of digital image processing and reproduction and endeavored to create a solution to fill the deficiency. The deficiency that Mr. Holm identified was that digital cameras, scanners, and image processing programs did not produce desired tone and color reproductions that resulted in image reproductions comparable to film processed by experts. In fact, the photographic film, film/video, and computer/digital photography industries were each heading in different directions to attempt to make pictures better. The photographic film industry was using fixed color rendering, where each film used the same tone curves for all scenes. The film/video industry used fixed color rendering with less sophistication, but sometimes with expert manual adjustments for professional films and video. And the thinking in the computer/digital industry at the time was that to make better pictures, picture reproduction should be as close as possible to the original scene. Thus, people in the computer/digital industry were focused on processing camera sensor data into scene color estimates (scene analysis).

17.  Mr. Holm discovered that he could create color rendering technology to adapt the estimated scene colors into the most pleasing pictures by taking into account both the original

image data and the capabilities of some anticipated output device used for producing a reproduction. This discovery was in contrast to the then-popular view that the most pleasing picture would simply be an accurate reproduction of the scene. Mr. Holm decided that the only way to bridge this gap in understanding would be to demonstrate the results of image-specific processing. Accordingly, he created Adaptive Tone Curve ("ATC") processes as a way to produce more pleasing pictures by constructing tone curves based on both the original image data from the capturing device (e.g., a camera) and capabilities of the desired output device (e.g., a computer display, printer, etc.), which are the subject of and claimed in his various patents including the '823 Patent, U.S. Patent No. 6,563,945, filed January 29, 2001 and issued March 13, 2003, and U.S. Patent No. 6,249,315, filed March 24, 1997 and issued June 10, 2001.

18.     Mr. Holm was an employee of Hewlett Packard from July 1997 through November 2008. Prior to 1997, Mr. Holm consulted to Hewlett Packard. Under his agreements with Hewlett Packard, Mr. Holm owns the '823 patent and Hewlett Packard has a non exclusive license under the patent, which issued while he was an employee of Hewlett Packard.

19.     While at Hewlett Packard, Mr. Holm worked with various software engineers to incorporate his previously conceived ATC methods in various operating environments, including a camera raw processing application for the Windows platform, and in-camera firmware that was incorporated into almost all Hewlett Packard cameras introduced in 2000 through 2007. Hewlett Packard, under the non-exclusive license from its employee Mr. Holm, incorporated some of Mr. Holm's patented methods into their printers as their Automatic Contrast Enhancement (ACE) and into their Photosmart Digital Cameras as their Preferred Photographic Reproduction (PPR). These cameras regularly won their respective categories for "overall quality of the digital print

and accuracy of color" at the annual Digital Imaging Marketing Association (DIMA) Camera and Printer Shoot-Out competitions.

20. Between 1997 and 2000, Mr. Holm repeatedly asked Hewlett Packard to market a camera raw processing application that used his ATC methods. He believed camera raw processing would help establish Hewlett Packard as a digital photography leader. However, because Hewlett Packard was not a software development company and was unsure whether Mr. Holm's prediction of the importance of camera raw processing would prove to be correct, in 2000, Hewlett Packard decided not to produce such a commercial software application product. Subsequent to this decision, Mr. Holm demonstrated the camera raw application that he had created, which included his ATC methods, at conferences and standards meetings in an attempt to generate interest in the potential of camera raw processing.

21. At the 2003 Macworld conference, Mr. Holm met with Chris Cox, one of the main Adobe Photoshop engineers at the time, and Mr. Holm demonstrated his patented ATC methods. Mr. Cox was excited about the technology and asked Mr. Holm if he would meet Thomas Knoll, one of the original creators of Adobe Photoshop, and show him the patented ATC methods. Mr. Holm thereafter met with Thomas Knoll, Chris Cox and Mark Hamburg (another lead Photoshop engineer) and showed them his patented ATC methods incorporated in the research-level Hewlett Packard camera raw processing application that implemented Mr. Holm's technology. Adobe expressed interest and asked Mr. Holm to sign a beta tester agreement for Photoshop that included rights for Adobe to implement contributions, such as Mr. Holm's ATC methods, into Photoshop without any payment to Mr. Holm. Mr. Holm declined Adobe's proposed agreement.

22. In 2008, Mr. Holm left Hewlett Packard, created Tarkus Imaging, Inc. and assigned his patents to Tarkus in order to market his application and license his patents.

23. Mr. Holm purchased a copy of Adobe's Photoshop Creative Suite 2 product and evaluated it and determined that it infringed many of his patented inventions, in part because it included an "auto" feature for Adobe Camera Raw adaptive tone curve color rendering, which incorporated Mr. Holm's patented methods for automatically adapting tone curves for digital images.

24. In October 2008, Mr. Holm, by and through his attorneys, sent a letter to Karen Cottle, the Senior Vice President and General Counsel of Adobe, placing Adobe on notice of infringement and making it aware of the '823 Patent. Mr. Holm offered to negotiate a patent license with Adobe and also offered to meet with Adobe representatives to provide a presentation on his patented technology. Adobe has repeatedly declined to meet with Mr. Holm on this topic and denied that they infringe any claims of the Tarkus Patents, thus forcing Tarkus to bring this suit against Adobe.

## COUNT I
### (ADOBE'S INFRINGEMENT OF THE PATENT-IN-SUIT)

25. Plaintiff realleges and reincorporates by reference herein the allegations contained in paragraphs 1 through 24.

26. With knowledge of Mr. Holm's rights in the '823 patent, Adobe has infringed and continues to infringe one or more claims of the '823 Patent by making, using, licensing, offering to sell, selling (directly or through intermediaries), importing, and/or supplying, in this district and elsewhere in the United States, products, including but not limited to, the Adobe Photoshop and Adobe Photoshop Creative Suite products, that use the methods claimed in the '823 Patent.

27. With knowledge of the '823 Patent, Adobe has and is actively, knowingly and intentionally aiding and abetting and inducing infringement of the '823 Patent in this district and elsewhere in the United States of America by selling the accused products and instructing and encouraging others in the use of its products that practice the methods claimed in the '823 Patent.

28. With knowledge of the '823 patent, Adobe is contributing to the infringement of the '823 Patent by others by offering to sell and selling within this district and elsewhere in the United States of America or importing into the United States of America components, which constitute a material part of the products that have and are infringing the patented inventions of the '823 Patent. Adobe knew that such components were especially made or especially adapted for use in a product that infringes the patented inventions of the '823 Patent. The components are not a staple article or commodity of commerce suitable for substantial non-infringing use.

## COUNT II
### (CANON'S INFRINGEMENT OF THE PATENT-IN-SUIT)

29. Plaintiff realleges and reincorporates by reference herein the allegations contained in paragraphs 1 through 20 and 22.

30. Upon information and belief, Canon has infringed and continues to infringe one or more claims of the '823 Patent by making, using, licensing, offering to sell, selling (directly or through intermediaries), importing, and/or supplying, in this district and elsewhere in the United States, products including but not limited to: Canon PIXMA iP100, iP3600, iP4600, iP4700, Pro9500 Mark II, Pro 9000 and iX7000 photo inkjet printers with Easy PhotoPrint EX software; PIXMA MX7600, MX860, MX330, MX320, MP990, MP640, MP560, MP490 and MP250 All-In-One printers with Easy PhotoPrint EX software; and Easy PhotoPrint EX software that use the methods claimed in the '823 Patent.

31. Upon information and belief, with knowledge of the '823 Patent, Canon has and is actively, knowingly and intentionally aiding and abetting and inducing infringement of the '823 Patent in this district and elsewhere in the United States of America by selling the accused products and instructing and encouraging others in the use of its products that practice the methods claimed in the '823 Patent.

32. Upon information and belief, Canon is contributing to the infringement of the '823 Patent by others by offering to sell and selling within this district and elsewhere in the United States of America or importing into the United States of America components, which constitute a material part of the products that have and are infringing the patented inventions of the '823 Patent. Canon knew that such components were especially made or especially adapted for use in a product that infringes the patented inventions of the '823 Patent. The components are not a staple article or commodity of commerce suitable for substantial non-infringing use.

## COUNT III
### (THE NIKON DEFENDANTS INFRINGEMENT OF THE PATENT-IN-SUIT)

33. Plaintiff realleges and reincorporates by reference herein the allegations contained in paragraphs 1 through 20 and 22.

34. Upon information and belief, the Nikon Defendants have infringed and continue to infringe one or more claims of the '823 Patent by making, using, licensing, offering to sell, selling (directly or through intermediaries), importing, and/or supplying, in this district and elsewhere in the United States, products including but not limited to: Nikon D3, D3S, D3X, D700, D300S, D90, D5000, D60 and D3000 digital SLR cameras; Nikon Coolpix S640, S630, S620, S570, S230, S220, S70, S1000pj, P6000, P90, L100 and L20 digital cameras; and Nikon Capture NX2 software, that use the methods claimed in the '823 Patent.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of this action.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A. A judgment holding Adobe liable for infringement of the patent-in-suit;

B. A preliminary and permanent injunction against Adobe, its respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the patent-in-suit;

C. Damages resulting from Adobe's infringement of the patent-in-suit, in an amount no less than a reasonable royalty, together with prejudgment interest and post-judgment interest;

D. A judgment holding Adobe's infringement of the '823 Patent to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

E. A judgment holding Canon liable for infringement of the patent-in-suit;

F. A preliminary and permanent injunction against Canon, their respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the patent-in-suit;

G. Damages resulting from Canon's infringement of the patent-in-suit, in an amount no less than a reasonable royalty, together with prejudgment interest and post-judgment interest;

H. A judgment holding Canon's infringement of the '823 Patent to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

I. A judgment holding the Nikon defendants liable for infringement of the patent-in-suit;

J. A preliminary and permanent injunction against the Nikon defendants, their respective officers, agents, servants, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and those persons in active concert or participation with them, enjoining them from continued acts of infringement of the patent-in-suit;

K. Damages resulting from the Nikon defendants' infringement of the patent-in-suit, in an amount no less than a reasonable royalty, together with prejudgment interest and post-judgment interest;

L. A judgment holding the Nikon defendants' infringement of the '823 Patent to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

M. A judgment holding this Action to be an exceptional case, and an award to Plaintiff Tarkus Imaging, Inc. for its attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

N. Such other relief as the Court deems just and equitable.

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ LLP

DATED: January 26, 2010

*/s/ Henry E. Gallagher, Jr.*
Henry E. Gallagher, Jr. (#495)
Chad S.C. Stover (#4919)
1007 North Orange Street
Wilmington, DE 19899
(302) 888-6288
hgallagher@cblh.com

*Attorneys for Plaintiff*
*Tarkus Imaging, Inc.*

OF COUNSEL:
Frederick A. Lorig
Steven M. Anderson
Richard H. Doss
QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
213-443-3000