IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARKUS IMAGING, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-063-LPS |
| ADOBE SYSTEMS, INC.; CANON U.S.A., INC.; NIKON AMERICAS, INC.; and NIKON, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF TARKUS IMAGING, INC.'S COMMENTS ON DEFENDANTS'
TECHNOLOGY TUTORIAL**

Pursuant to the July 1, 2010 Scheduling Order (¶ 9), Plaintiff, Tarkus Imaging Inc. ("Tarkus") hereby submits its comments on Defendants' Technology Tutorial ("DTT").

1. DTT slide 5 is incomplete in that various cameras, including some of the accused products, have the capability to process images in the camera without first transferring the image to the computer. Furthermore, it is possible to view images without using a computer, for example, on the screens of cameras and cell phones, which can take pictures and display images on the devices themselves. It is also possible to display or print images captured on some devices by directly transferring the images to a display such as a television or to a printer.

2. DTT slide 9 is likewise incomplete in that the Red, Green and Blue ("RGB") code values for a particular tone, Brown as represented in Slide 9, are not tone or luminance values, but merely code values. These code values cannot be related to a specific tone without a color space to define what these code values represent. *See* Tarkus' Technology Tutorial, slide 19. For example, the tone represented by Red 213, Green 111, and Blue 56, as shown in DTT is not specified, or known, unless a color space or color profile is used to define the relationship between the code values and tones. In other words, without an associated color space being known, the code values Red 213, Green 111, and Blue 56 are just code values, and do not define a unique tone.

3. DTT slide 10 is ambiguous regarding the use of "Density." If Defendants are referring to visual density—which appears to be the case—then, further qualification is required as density is always relative to some reference. Defendants use luminance to define density in the equation "Density = -log(luminance)," which, for visual density, has to be relative to some white reference and possibly a black reference. In other words, luminance used in the equation is not true luminance, but a white normalized and possibly black normalized luminance.

4. DTT slide 11 is misleading, particularly with respect to the cameras accused of infringement in this suit. The statement "the dynamic range that can be captured by a digital camera's sensor is usually less than the dynamic range of a real-life scene" is inaccurate. The sensors of most high end cameras, such as those accused of infringement in this case, can capture

the dynamic range of interest of most real-life scenes. The perception that this is not the case results from deficiencies in the exposure and processing used in many cameras that cause unnecessary clipping.

5. DTT slides 12 and 13 are misleading and inaccurate. The curves shown from Castleman are not tone reproduction curves because they do not define tone reproduction. Instead, the curves shown from Castleman are plots of point operations, which are operations that take input code values and convert them to output code values. In contrast, the input and output values of a tone reproduction curve are tonal values. In other words, the values on the horizontal and vertical axes of the curves shown in slides 12 and 13 are the 256 gray-scale level code values in an 8-bit image, and are not specified to be luminance values or other tonal metric values that would be used on the axes of a tone reproduction curve. In fact, 256 equally spaced luminance levels would not be sufficient for the capture or processing of most real-world scenes. Additionally, in order to define a tone reproduction operation, it is necessary to have knowledge of the original image and reproduction image color spaces.

6. Defendants' improperly proffer claim constructions in an attempt to argue their non-infringement positions by asserting that the '823 patent requires identification of a specific output device, such as a monitor or printer attached to a computer. *See, e.g.,* DTT slides 14, 16, 23, 24, 26, and 28-30. Defendants, however, omit that the '823 patent has claims directed to methods where the density capabilities of the output device are assumed to be those of a standard output device. For example, DTT slide 14, is misleading and an incomplete description of the '823 patented inventions in an attempt to limit the patented methods to a particular claim or embodiment. The slide also ignores the dependent claims and the specification describing various embodiments of the patented inventions. For example, the script of slide 14 states that "by taking into account the dynamic range capability of a monitor or printer, for example, the '823 Patent provides a specific method of processing digital images." This slide ignores claim 22, which states "[t]he method of claim 1 in which the density capabilities of the output device are assumed to be those of a standard output device." *See, e.g.,* '823 Patent at 16:60-61, 17:9-17,

17:32-37; *see also* Tarkus' Tech. Tutorial at slide 24. In other words, the patented methods can use an assumed output device, such as a standard monitor, and do not require the density capabilities of an output device that is attached to a computer, such as a monitor or printer, as Defendants repeatedly allege in slides 14, 16, 23, 24, 26, and 28- 30. Indeed, various methods claimed in the '823 patent can be practiced without the original or the resulting processed image being viewed on a monitor or printed on a printer.

7. Similarly, DTT slide 16 attempts to limit the patented methods to require the output device capabilities of a "particular printer or monitor being used." As discussed above with respect to DTT slide 14, the patented methods are not so limited, as demonstrated by claim 22 in which the patented methods can be practiced by assuming an output device to be a standard monitor and do not require the density capabilities of an output device that is attached to a computer, such as a monitor or printer.

8. DTT slides 17, 20-22 refer to U.S. Patent 4,731,662 by Udagawa and Sasaki ("Udagawa '662") in an apparent attempt to allege the '823 patent is anticipated. The Udagawa '662 reference, however, discloses dynamic range compression by scaling, and <u>not</u> by using tone curves as in embodiments of the '823 patented methods. Indeed, Udagawa '662 does not even mention the words "tone" or "curve." Furthermore, Udagawa '662 only discloses dynamic range scaling where the input range is larger than the output device reproduction range capabilities. The graph on DTT slide 22, as admitted by Defendants, is <u>not</u> a tone curve, but is a histogram showing a redistribution of the pixels, and the equation cited by Defendants (Dout/Din Y + Y min → Y') is a scaling equation, <u>not</u> a tone curve operation. Additionally, Udagawa '662 does not disclose how to deal with situations where the output dynamic range meets or exceeds the input dynamic range, as the '823 patented methods do.

9. The graph shown in DTT slide 18 is likewise <u>not</u> a tone curve operation, but merely a white and black point scaling operation that simply changes the white and black points of the image code values. It does not consider output device capability limits or color spaces, as practiced by embodiments of the '823 patented methods. In other words, Nikon's LS-3510AF

software discloses scaling of the black and white points of an image. Such operations do not constitute tone reproduction curve construction.

10. DTT slide 19 is an apparent attempt by defendants to allege that Adobe PhotoShop 3.0 practiced the patented methods. However, the curve depicted in slide 19 is not a tone reproduction curve, but a point operation applied to image code values. Notably, defendants do not, and cannot, allege that the function depicted in slide 19 is a tone reproduction curve because it does not define a specific tone reproduction. In other words, if the operation depicted in slide 19 is applied, the tone reproduction achieved will depend on the color space in which the operation is applied, as it is a code value operation that does not consider what tones are represented by the code values, or what color space values are required to produce a tone reproduction on an output device.

11. DTT slide 24 is misleading with respect to the statement that in Adobe Camera Raw ("ACR") "the auto adjust feature does not determine what type of monitor is in use." Determination of the type of monitor in use is not required by the '823 patented methods, only that the output device <u>capabilities</u> be determined, and those capabilities can be assumed to be those of a standard output device. ACR does obtain the capabilities for both the standard output device (as indicated under the image in Slide 24 as "sRGB IEC6 1996-2.1..."), and for an actual display used to view the image shown (through the mapping of the capabilities of the standard output device to the capabilities of the monitor used to view the image using black point compensation).

12. DTT slide 26 is similarly misleading in the statement "the four optional adjustments shown on this slide can be made regardless of whether a user's computer is attached to a printer or not." It is not necessary to have a printer connected to the computer to practice the methods of the '823 Patent. Canon's Easy-PhotoPrint EX software considers the output device capabilities by assuming a standard output device, such as sRGB. *See* '823 Patent claim 22 discussed above.

13. DTT slides 28-30 are incomplete and inaccurate with respect to the statements that the accused Nikon products do not take into account the monitor or printer attached to the user's PC, or that might be used to print or display the image. Indeed, Nikon's accused products assume a standard output device, such as sRGB, and further allows a user to select a specific output device by selecting a particular ICC color profile.

Dated: January 31, 2011                                         Respectfully submitted,

                                                                                                    /s/ Chad S.C. Stover
                                                           Henry E. Gallagher, Jr. (No. 495)
Chad S.C. Stover (No. 4919)
Connolly, Bove, Lodge & Hutz LLP
The Nemours Building, 1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
Email: cstover@cblh.com

*Attorneys for Plaintiff Tarkus Imaging, Inc.*

Of Counsel:

Frederick A. Lorig
Steven M. Anderson
Richard H. Doss
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
213-443-3000

## **CERTIFICATE OF SERVICE**

I, Chad S.C. Stover, hereby certify that on January 31, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the registered attorney(s) of record that the document is available for viewing and downloading from CM/ECF, and also was served as follows:

BY ELECTRONIC MAIL AND HAND DELIVERY

Douglas E. McCann
Fish & Richardson P.C.
222 Delaware Avenue, 17th floor
P.O. Box 1114
Wilmington, DE 19899
(302) 652-5070
dmccann@fr.com

BY ELECTRONIC MAIL

Robert J. Kent
Fish Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
(650) 839-5070
rkent@fr.com

Frank E. Scherkenbach
Thomas A. Brown
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110
(617) 521-7834
scherkenbach@fr.com
tbrown@fr.com

*Attorneys for Defendants
Adobe Systems, Inc.*

BY ELECTRONIC MAIL AND HAND DELIVERY

Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants
Nikon Americas, Inc. and Nikon, Inc.*

BY ELECTRONIC MAIL

Scott W. Doyle
Jonathan R. DeFosse
Shearman & Sterling, LLP
801 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20004-2634
(202) 508-8000
scott.doyle@shearman.com
jonathan.defosse@shearman.com

*Attorneys for Defendants
Nikon Americas, Inc. and Nikon, Inc.*

| | |
|---|---|
| BY ELECTRONIC MAIL AND HAND DELIVERY | BY ELECTRONIC MAIL |
| Richard L. Horwitz<br>David Ellis Moore<br>Potter Anderson & Corroon, LLP<br>1313 N. Market St., Hercules Plaza, 6th Flr.<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>(302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br><br>*Attorneys for Defendant Canon U.S.A., Inc* | Christopher E. Chalsen<br>Christopher J. Gaspar<br>Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, NY  10005-1413<br>cchalsen@milbank.com<br>cgaspar@milbank.com<br><br>*Attorneys for Defendant Canon U.S.A., Inc.* |
| DATED: January 31, 2011 | /s/ *Chad S.C. Stover*<br>Henry E. Gallagher, Jr. (#495)<br>Chad S.C. Stover (#4919)<br>CONNOLLY BOVE LODGE & HUTZ LLP<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19899<br>(302) 888-6288<br>cstover@cblh.com<br><br>*Attorneys for Plaintiff Tarkus Imaging, Inc* |