## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARKUS IMAGING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 10-63-LPS |
| v. ) | |
| ) | **PUBLIC VERSION** |
| ADOBE SYSTEMS, INC., CANON U.S.A., ) | |
| INC., NIKON AMERICAS, INC., and ) | |
| NIKON, INC., ) | |
| ) | |
| Defendants. ) | |

## LETTER TO THE HONORABLE LEONARD P. STARK
## FROM RICHARD L. HORWITZ

cc: Clerk of Court (Via Hand Delivery)
    Counsel of Record (Via electronic mail)

Dated: January 31, 2011
Public Version Dated: February 7, 2011
999027 / 35458

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Canon U.S.A., Inc.*

**Potter
Anderson
& Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

January 31, 2011; Public Version Dated: February 7, 2011

**VIA ELECTRONIC FILING**

The Honorable Leonard P. Stark   **PUBLIC VERSION**
United States District Court
844 N. King Street
Wilmington, DE 19801

      Re:    *Tarkus Imaging, Inc. v. Adobe Systems, Inc., et al.*, C.A. No. 10-063-LPS

Dear Judge Stark:

      I am Delaware counsel for Canon U.S.A., Inc. in the above action, but write on behalf of all defendants to briefly object to portions of Tarkus Imaging, Inc.'s technology tutorial. The defendants object to slides 5, 11, 18, 22-28, and the related aspects of the remainder of Tarkus's tutorial, as explained in more detail below.

      As an initial matter, the defendants recognize that some amount of terminology found in Tarkus's asserted patent must be used verbatim, or in near-verbatim form, to effectively introduce and explain to Your Honor certain concepts that will arise in this suit. In the defendants' view, however, Tarkus's tutorial in several respects uses claim phrases in ways that are inaccurate or misleading and that "argue the parties' claims construction contentions" in contravention of the Scheduling Order's prohibition on such argumentation. For brevity, we bring to the Court's attention a few such examples in this letter, and will reserve for later – during claim construction briefing and the *Markman* hearing scheduled for May 23, 2011 – a more complete treatment of all contested claim construction issues.

sRGB Is a <i>Color Space</i>; sRGB Is <i>Not</i> an Output Device;<br>and sRGB Is <i>Not</i> an Output Device's Density Capability

      In several places, Tarkus's tutorial conflates three distinct concepts: (1) a color space, (2) an output device, and (3) density capabilities of an output device. *See, e.g.*, slides 18, 24, 28. For example, on slide 24, Tarkus states, incorrectly and imprecisely, that ███████████████████████████████████████ In its narration of slide 28, Tarkus refers, again incorrectly, to ████████████████████████ ████ Slide 18 further conflates the three distinct concepts mentioned above, both in the

statement on the slide that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and in the accompanying narration.

To be clear, sRGB is a standard used to define a color space. That standard does not, however, describe any particular output device (e.g., monitor or printer) and does not prescribe required capabilities for any particular output device. The sRGB standard is used by designers of electronics equipment, such as cameras and computers, simply to allow various electronic devices to speak the same language when communicating a particular color and brightness level for a pixel of an image.

Thus, a shorthand term that Tarkus employs frequently in its tutorial – namely, an sRGB device – is incorrect. It confuses the concept of an sRGB color space defined by an international standards-setting body (in this case, the International Electrotechnical Commission), on the one hand, with the concept of an output device (e.g., a monitor or a printer) on the other hand. A printer or camera may recognize or use the *sRGB* color space, rather than some other defined standard for articulating a color space. But this does not necessarily mean that such a printer or camera is actually capable of reproducing all colors and brightness levels defined by the sRGB color space. The printer or camera's actual capabilities in this regard are a separate concept. To put it another way, because the sRGB color space is a standard used to define a way to communicate specific color and brightness levels *regardless of the piece of electronics equipment that is handling such color and brightness levels*, the concept of sRGB should not be conflated with the concept of density capabilities of an output device. This latter concept directly concerns the capabilities of electronics equipment.

### "Light Intensities" Is Not the Same Concept as a "Dynamic Range"

In the narration to slide 5 and elsewhere, Tarkus equates "light intensities" with "dynamic range." This is misleading and argumentative in at least two ways. Firstly, "light intensities" is not synonymous with "dynamic range." Dynamic range is a term of art that has different meanings in the industry depending upon context. But *none* of the various meanings of "dynamic range" known to the defendants is simply "light intensities." As the defendants noted in their tutorial, one "measurement of dynamic range is the difference in density values of the lightest and darkest subject areas." *See* Defendants' Tutorial at slide 10 (quoting Stroebel, Comptom, Current, and Zakia, *Basic Photographic Materials and Processes*, 2d ed. (2000), pp. 362-63).

Secondly, the words "dynamic range" are found in several places in every claim of the patent Tarkus asserts in this litigation. If necessary during claim construction activities, the defendants will provide and support a proper construction of either "dynamic range" by itself, or those words as they are found in various other phrases of claim 1, such as "original pictorial dynamic range" and "reproduction pictorial dynamic range."

For much the same two reasons, the defendants object to the extent Tarkus's tutorial suggests that the claim phrases "original pictorial dynamic range" and "reproduction pictorial dynamic range" have (1) uncontested meanings, and (2) the meanings Tarkus ascribes to them in

the tutorial. For example, slide 22 equates "original pictorial dynamic range" (a claim term) with ███████████████████████████████████████████. It also equates "reproduction pictorial dynamic range" (a claim term) with ███████████████████████████████████████ ███████████[1] As the claim itself states, and the defendants will more fully explain during claim construction, the "reproduction pictorial dynamic range" must be determined based on the density capabilities (e.g., the ability to reproduce tones) of an output device (e.g., a printer or a monitor). The claim itself thus belies Tarkus's suggestion that "reproduction pictorial dynamic range" is merely ███████████████████████████████████████████████████████ ████████████████████████.

### "Output Device" Is a Contested Claim Term

Tarkus's tutorial repeatedly argues that the "output device" ██████████████████, ████████████████████████████. See, e.g., slide 24. For many of the reasons explained above, the defendants contest several aspects of this Tarkus argument and, if necessary, will fully explain the proper construction for the term "output device" at the appropriate time. For now, however, we note that none of the citations to the patent listed on slide 24 states or suggests that the "output device" of the patent claims is (1) an assumed standard output device (whatever that means), (2) a standard computer monitor (whatever that means), or (3) sRGB, which, as explained above, is a color space standard, not a piece of electronics equipment capable of reproducing an image.

### The Steps Discussed in Slide 22 Are Not "The Patented Method"

Several aspects of the tutorial misleadingly state or imply that "the patented method" and/or particular portions of asserted claim 1 either affirmatively *require* certain things, or affirmatively do *not* require certain other things. For example, the defendants object to slides 22-28 because they go beyond the mere introduction of technological concepts and, instead, are principally unsupported (and prohibited) claim construction arguments.

Slide 22 purports to present an ████████████████████████████. But the list of steps recited on this slide are misleading to the extent they are supposed to describe the "patented methods." First of all, much of the language and concepts found on slide 22 are found nowhere in the asserted patent. Notably, Tarkus provides no citation to support its statement that slide 22's steps recite an embodiment of the "patented methods." Secondly, the language and concepts recited on slide 22 are in many ways different from and inconsistent with the plain language of every claim in the asserted patent. "It is a 'bedrock principle" of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure*

---

[1] Slide 27 repeats this claim-construction argument by equating the "reproduction pictorial dynamic range" (a claim term) with ████████████████████████████████████ █████████.

*Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 115 (Fed. Cir. 2004)). Thus, slide 22's list of steps are not the "patented" (*i.e.*, claimed) methods.

A side-by-side comparison of claim 1, the patent's only independent claim, with slide 22's steps highlights how different slide 22's steps are from the "patented method."

| Claim 1 – the Method as Stated in Each Claim of the Asserted Patent | Slide 22's Characterization of the "Patented Methods" |
|---|---|
| A method of pictorial digital image processing of an original image comprising the steps of: | |
| collecting statistics of an original image; | [redacted] |
| obtaining density capabilities of an output device to be used for producing a reproduction; | [redacted] <br><br> *DEFENDANTS' NOTE*: Claim 1 also states expressly that the "output device" is the one "to be used for producing the reproduction." |
| determining both <br><br> an original pictorial dynamic range from the statistics of the original image and | [redacted] <br><br> *NOTE*: Claim 1 does not use the phrase "the highlight and shadow points" – a different concept altogether – and thus we object to Tarkus's argument at this stage that "original pictorial dynamic range" means "the highlight and shadow points." |
| a reproduction pictorial dynamic range from the density capabilities of the output device; | [redacted] <br><br> *NOTE*: Claim 1 does not use the phrase "the placement of the highlight and shadow points on the reproduction" – again, a different concept altogether – and thus we object to Tarkus's argument at this stage that "reproduction pictorial dynamic range" means "the placement of the highlight and shadow points on the reproduction." |

| Claim 1 of the Asserted Patent | Slide 22's Incorrect Characterization |
|---|---|
| constructing a tone reproduction curve relating the statistics of the original image to the visual density capabilities of the output device, based on a comparison between the original pictorial dynamic range and the reproduction pictorial dynamic range; and | *NOTE*: Claim 1 states expressly that the curve (1) relates "the statistics of the original image" (not █████████) to "the visual density capabilities of the output device" (not █████████); and (2) is constructed "based on a comparison between the original pictorial dynamic range and the reproduction pictorial dynamic range." Claim 1 does *not* state that the curve is constructed merely by ██████████ |
| transforming the original image into color space values, using the tone reproduction curve, for producing the reproduction with the output device. | *NOTE*: Claim 1 also states expressly that the "transforming" is done "using the tone reproduction curve." |

### Whether or Not the Asserted Patent Overcame any Problem in the Art Is a Disputed Issue

Tarkus states in its narration of slide 18 that the "patented method" "overcomes" certain stated problems. The defendants do not necessarily agree, and we object to the extent Tarkus suggests that its "patented method" was the first to overcome such problems. We also object to, and disagree with, Tarkus's suggestion on slide 11 that ████████████████████████████ ████████████████████, none of which is a step recited in the patent's claims.

Respectfully,

/s/ Richard L. Horwitz

Richard L. Horwitz

RLH/nmt/999855/35458
cc:  Clerk of Court (Via Hand Delivery)
      Counsel of Record (Via electronic mail)