IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TARKUS IMAGING, INC.

        Plaintiff,

        v.                                C.A. No. 10-63-LPS

ADOBE SYSTEMS, INC.;
CANON U.S.A., INC.;
NIKON AMERICAS INC.; and
NIKON, INC.

        Defendants,

---

## MEMORANDUM OPINION

Henry E. Gallagher, Jr. and Chad S.C. Stover, CONNOLLY BOVE LODGE & HUTZ LLP, Wilmington, DE; Frederick A. Lorig, Steven M. Anderson, Richard H. Doss, Michael W. Gray, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, CA.

    Attorneys for Plaintiff.

Douglas E. McCann, FISH & RICHARDSON P.C., Wilmington, DE; Frank E. Scherkenbach, Thomas A. Brown, FISH & RICHARDSON P.C., Boston, MA; Robert J. Kent, FISH & RICHARDSON P.C., Redwood City, CA.

    Attorneys for Defendant Adobe Systems, Inc.

Richard L. Horwitz and David E. Moore, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Christopher E. Chalsen, Christopher J. Gaspar, Nathaniel T. Browand, MILBANK, TWEED, HADLEY & McCLOY LLP, New York, NY.

    Attorneys for Defendant Canon U.S.A., Inc.

June 14, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court are: (1) Canon's Motion for Summary Judgment of Non-Infringement (D.I. 214); (2) Canon's Motion for Summary Judgment of Invalidity (D.I. 217); (3) Adobe's Motion for Summary Judgment of Non-Infringement (D.I. 220); and (4) Adobe's Motion for Summary Judgment of No Indirect Infringement (D.I. 222).[1] For the reasons discussed below, each of these motions will be denied.

I. **INTRODUCTION**

Plaintiff Tarkus Imaging, Inc. ("Tarkus") initiated the instant patent infringement action against Adobe Systems, Inc. ("Adobe") and Canon U.S.A., Inc. ("Canon") (collectively, "Defendants") on January 26, 2010. (D.I. 1) Tarkus alleges that Defendants infringe U.S. Patent No. 6,628,823 (the "'823 patent" or "the patent-in-suit"). (*Id.*) Details about the patent-in-suit and more extensive background are provided in the Court's Memorandum Opinion regarding claim construction. (*See* D.I. 367)

The Court heard argument on the pending summary judgment motions at the pretrial conference on June 1, 2012. *See* Pretrial Conference Hr'g Tr., June 1, 2012 (hereinafter "Tr.") (D.I. 432). At the pretrial conference, the Court informed the parties that it was inclined to deny the pending summary judgment motions. (Tr. at 155) Having reviewed the briefing, expert reports, and other documentary evidence submitted in support thereof, the Court concludes that summary judgment is not appropriate at this time. In large part, the portions of this case at issue in the pending summary judgment motions present a "battle of the experts" that is not amenable

---

[1]Various other motions remain pending in this case, which this Memorandum Opinion does not address.

1

to resolution prior to the presentation of evidence, including testimony. *See generally Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*, 143 Fed. Appx. 320, 330 (Fed. Cir. July 25, 2005) (finding "expert testimony sufficient to raise a genuine issue of material fact"); *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (denying summary judgment because determination of "who is correct in this battle of experts is not for [the Court] to decide"); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998) (affirming denial of summary judgment, given that "summary judgment papers [were] not sufficient to resolve the differences in expert opinion").

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a ***genuine issue for trial***." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted) (emphasis in original).

The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

III. **DISCUSSION**

A. <u>Summary Judgment of Non-Infringement</u>

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if one or more limitations of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). Thus, summary judgment of non-infringement can only be granted if, after viewing the facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused product is covered by the claims (as construed by the Court). *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

1. <u>Canon's Motion for Summary Judgment of Non-Infringement</u>

The record evidence relating to this motion raises genuine issues of material fact. Canon contends that its accused products do not: (1) obtain density capabilities of an output device; (2) determine an original pictorial dynamic range and a reproduction pictorial dynamic range based on the density capabilities of the output device; or (3) construct a tone reproduction curve ("TRC") based on a comparison between the original pictorial dynamic range and the reproduction pictorial dynamic range. (*See* D.I. 215 at 11-20) Tarkus's expert, Edward Giorgianni, opines that the Canon accused products literally meet each of these claim limitations. (*See* D.I. 245, Ex. A ¶¶ 53-58 (stating accused products obtain density capabilities); *id.*, Ex. A ¶¶

4

60-70 (stating accused products determine original pictorial dynamic range from statistics of original image and reproduction pictorial dynamic range from density capabilities of output device); *id.*, Ex. A ¶¶ 72-80 (stating accused products construct TRC)) Mr. Giorgianni further opines that the Canon accused products also meet these claim limitations under the doctrine of equivalents. (*See* D.I. 245 ¶¶ 11-13; *id.*, Ex. A ¶¶ 70, 84) Accordingly, a reasonable juror could find that the accused products meet all of the limitations of claim 1 of the patent-in-suit literally or under the doctrine of equivalents.

The Court is not persuaded, at this stage of the proceedings, by Canon's contentions that Tarkus is barred from asserting doctrine of equivalents infringement theories due to application of prosecution history estoppel (D.I. 215 at 4) or that Tarkus has failed to create a genuine dispute of material fact because Tarkus's expert has not identified specifically infringing source code.[2] The Court will deny Canon's Motion for Summary Judgment of Non-Infringement.

### 2. Adobe's Motion for Summary Judgment of Non-Infringement

The record evidence relating to this motion raises genuine issues of material fact. Adobe contends that its accused products do not: (1) obtain density capabilities of an output device; (2) determine an original pictorial dynamic range and a reproduction pictorial dynamic range based on the density capabilities of the output device; or (3) construct a TRC based on a comparison between the original pictorial dynamic range and the reproduction pictorial dynamic

---

[2]Tarkus's expert, Mr. Giorgianni, relies on various forms of circumstantial evidence, including testimony from a Canon Rule 30(b)(6) witness on source code. *See generally O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 449 Fed. Appx. 923, 928 (Fed. Cir. Nov. 18, 2011) (stating infringement can be proven through direct or circumstantial evidence). Additionally, Mr. Giorgianni relies on the expert report of William Elswick, an expert for Tarkus who personally reviewed the source code. (*See* D.I. 245, Ex. A ¶ 21)

5

range. (*See* D.I. 221 at 10-17) Tarkus's expert, Edward Giorgianni, opines that the Adobe accused products literally meet each of these claim limitations. (*See* D.I. 244, Ex. A ¶¶ 56-65 (stating accused products obtain density capabilities); *id.*, Ex. A ¶¶ 67-73 (stating accused products determine original pictorial dynamic range from statistics of original image and reproduction pictorial dynamic range from density capabilities of output device); *id.*, Ex. A ¶¶ 75-97 (stating accused products construct TRC)) Mr. Giorgianni further opines that the Adobe accused products also meet these claim limitations under the doctrine of equivalents. (*See* D.I. 244 ¶¶ 10-12; *id.*, Ex. A ¶¶ 97, 106) Accordingly, a reasonable juror could find that the accused products meet all of the limitations of claim 1 of the patent-in-suit literally or under the doctrine of equivalents.

The Court is not persuaded, at this stage of the proceedings, by Abode's contentions regarding split infringement (D.I. 221 at 15-16)[3] or Tarkus's expert's purported concession that Adobe's accused products do not obtain density capabilities (D.I. 379 at 2-4).[4] The Court will

---

[3]In order to be liable for direct infringement, one person must either perform all the steps of a claim or control the performance of all the steps of a claim. *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-81 (Fed. Cir. 2007). While a manufacturer-customer relationship is not itself sufficient to demonstrate control for purposes of infringement, evidence that a manufacturer directs its customers' performance can be sufficient to demonstrate control. *See Centillion Data Sys., LLC v. Quest Commc'ns Int'l. Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011). Here, the record contains genuine disputes of fact at least as to the guidance Adobe provides its customers and the distribution channels for Adobe's software. *See generally Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1119 (Fed. Cir. 2002) (rejecting argument that, because individual users access software from their computers, defendant cannot operate and control product use, where software was stored on defendant's server).

[4]Mr. Giorgianni opined that the "Adobe Accused Products can specify the density capabilities of the assumed output device using specified reflectance values, transmittance values, or luminance factors." (D.I. 384 at 3)

deny Adobe's Motion for Summary Judgment of Non-Infringement.

### 3. Adobe's Motion for Summary Judgment of No Indirect Infringement

Adobe moves for summary judgment of no indirect infringement on the basis that there are no genuine disputes of material fact as to whether Adobe is liable under a theory of induced infringement or contributory infringement. (*See* D.I. 223) "To prove induced infringement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Toshiba Corp. v. Imation Corp.*, ___ F.3d ___, 2012 WL 2087187, at *4 (Fed. Cir. June 11, 2012) (internal quotation marks omitted). "Induced infringement . . . requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB N.A.*, 131 S. Ct. 2060, 2068 (2011). "Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009). As with induced infringement, contributory infringement requires that the defendant have knowledge of the existence of the patent that is infringed. *See Global-Tech*, 131 S. Ct. at 2068. In addition, the patentee bears the burden of proving that the accused products have no substantial non-infringing uses. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006).

The record evidence relating to induced infringement raises genuine issues of material fact. As the Court has already held, Tarkus has presented sufficient evidence from which a reasonable juror could find that Adobe's accused products infringe the patent-in-suit. With respect to whether Adobe knowingly induced infringement and possessed the specific intent to

7

encourage another's infringement, Adobe concedes that it had knowledge of the patent-in-suit in October 2008 (*see* D.I. 418 at 1; Tr. at 11) and Tarkus has presented evidence from which a reasonable juror could find that Adobe was aware that its accused products infringed the patent-in-suit from that date forward (*see, e.g.*, D.I. 246, Ex. 19 (letter from Tarkus's attorney to Adobe asserting that Adobe was infringing patent by producing accused products containing infringing component)) A reasonable juror could further conclude that Adobe knew it was inducing users of its accused products to infringe the patent-in-suit. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (holding that reasonable juror could determine defendant knowingly induced infringement based on fact that defendant received letter accusing its products of infringing patent-in-suit and sold products containing allegedly infringing component). The record further contains evidence that Adobe advertised use of the accused features of its products and provided users with instructions detailing how to operate the accused products. (*See* D.I. 239 at 14) "[E]vidence that [the defendant] knew of the patent-in-suit and instructed its . . . customers about how to use [the claimed invention] . . . is sufficient to create a genuine issue of material fact as to whether [the defendant] had the requisite specific intent to induce infringement." *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1376 (Fed. Cir. 2011).

The record evidence relating to contributory infringement also raises genuine issues of material fact. The Court is not persuaded, at this stage of the proceedings, by Abode's contentions regarding the purported substantial non-infringing uses of the accused products. (D.I. 223 at 2) Where the allegedly infringing component is embodied in a larger product, the Court must examine whether the particular component that allegedly infringes has a substantial

non-infringing use. *See Fujitsu*, 620 F.3d at 1330-31; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009); *i4i P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010); *Ricoh Co. v. Quanta Comp. Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008) (stating party may not evade liability as contributory infringer by embedding infringing device within "a larger product with some additional, separable feature before importing and selling it"). Here, the parties dispute whether the proper focus for this inquiry is on Camera Raw – which Adobe contends has many non-infringing capabilities – or solely on Camera Raw's "auto" feature – which Tarkus contends has no substantial non-infringing uses.[5] Resolution of this dispute must await presentation of evidence, including testimony.

Finally, genuine issues of material fact preclude summary judgment on the issue of indirect infringement for acts prior to October 8, 2008. Adobe contends that it is entitled to summary judgment on this issue because it did not have knowledge of the '823 patent until October 8, 2008. (D.I. 315 at 7; Tr. at 11) However, Tarkus has presented evidence that creates a dispute of fact as to whether Adobe was willfully blind to the existence of the '823 patent prior to this date. (*See, e.g.*, D.I. 376, Ex. 15 (citing evidence of conversations, meetings, and emails between Tarkus's inventor and Adobe representatives that occurred between 2003 and 2006); Tr. at 76-77 (noting that licensing offers were made prior to 2008 and that information about '823 patent was available on Patent and Trademark Office website)) Adobe may have indirectly infringed the patent prior to October 8, 2008 if it is found to have acted with willful blindness (provided that the other requirements for indirect infringement are also met). *See Global-Tech*,

---

[5]Tarkus's expert opined that "the components that are at issue here (the Adobe Camera Raw plug-in and relevant Lightroom code, as described below) have no substantial non-infringing uses." (D.I. 246, Ex. 2 ¶ 19)

9

131 S. Ct. at 2069.

Accordingly, the Court will deny Adobe's Motion for Summary Judgment of No Indirect Infringement.

## B. Canon's Motion for Summary Judgment of Invalidity

Canon contends that the '823 patent is invalid because the term "visual density capabilities," as used in claim 1, lacks an antecedent basis, rendering its meaning insolubly ambiguous in violation of 35 U.S.C. § 112 ¶ 2.[6] An express antecedent basis is not required to render a claim definite. *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1376 (Fed. Cir. 2008) (stating "well settled rule that claims are not necessarily invalid for a lack of antecedent basis"); *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed Cir. 2006) ("[T]he failure to provide explicit antecedent basis for terms does not always render a claim indefinite . . . if the scope of a claim would be reasonably ascertainable by those skilled in the art.") (internal quotation marks omitted). Tarkus's expert, Mr. Giorgianni, has opined that a person of ordinary skill in the art would ascertain – without the need for an express antecedent basis elsewhere in claim 1 – that the "output device" of claim 1 would obtain "visual density capabilities," which are a sub-set of the "density capabilities." (*See* D.I. 247, Ex. 4 ¶¶ 269-70, 272)[7] Mr. Giorgianni's expert opinion, based on the plain language of the claims

---

[6]Canon had previously asserted that claim 22 of the '823 patent was invalid for the reasons asserted in its claim construction briefing and at the *Markman* hearing. (D.I. 218 at 18-19) However, the Court subsequently ruled in its claim construction opinion that claim 22 is not insolubly ambiguous. (*See* D.I. 367 at 32) Thereafter, Cannon withdrew indefiniteness as a ground for seeking to invalidate claim 22. (D.I. 381 at 2)

[7]The testimony of the inventor, Mr. Holm, on which Canon relies, is not dispositive as to the validity of his patent. *See generally Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992) ("[T]estimony of the inventor[ ] . . . does not negate the meaning conveyed

10

and the specification, is sufficient to create a genuine dispute as to whether a person of ordinary skill in the art could determine the scope of the claim and the meaning of "visual density capabilities" despite the lack of express antecedent basis. As a claim term without an explicit antecedent basis may nevertheless be definite if the term "has a reasonably ascertainable meaning ... decided in context," *Microprocessor*, 520 F.3d at 1370-71, summary judgment is not warranted based on the present record. The Court will deny Canon's Motion for Summary Judgment of Invalidity.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny each of the summary judgment motions. An appropriate Order follows.

---

to one of ordinary skill in the art from reading the patent.").